IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CR 112-242 |
| | * | |
| ANTHONY BRUCE CRAGO | * | |
| | * | |

**O R D E R**

On October 15, 2014, Defendant Anthony Bruce Crago filed a motion and supporting affidavit, which have been docketed as a "Motion to Inspect the Master Juror Lists," or in the alternative, a "Motion to Dismiss the Indictment for Improper Venue of Grand Jury," and an "Affidavit of Specific Negative Averment." (Docs. 294, 295.) The crux of Defendant's argument is this: he believes his criminal charges should be dismissed because the United States District Court for the Southern District of Georgia was not properly established as an Article III Court under the Constitution and laws of the United States and only grand jurors who reside on federally owned land could properly indict him. The Court understood Defendant's motion, to attack the validity of his federal sentence on the ground that this Court lacks jurisdiction.[1] Accordingly, the Court

---

[1] The Court is aware that the Jury Selection and Service Act, 28 U.S.C. §§ 1861-1878, secures litigants "a virtually unqualified right to inspect jury lists" so as to further the statute's overall purpose: that "grand and petit juries [are] selected at random from a fair cross section of the community." Test v. United States, 420 U.S. 28, 30 (1975) (per curiam) (internal quotation marks and citations omitted); Dean v. United States, No. 3:07-CR-122-MCR, 2009 WL 1587088, at *2 (N.D. Fla. June 5, 2009), aff'd, 367

issued Defendant a Castro[2] warning, which notified him of its intent to recharacterize his filing as a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (Doc. 297.) The Court granted Defendant thirty days to consider whether he wished to contest the recharacterization, withdraw his motion, or assert any additional § 2255 claims. (Id. at 2.)

Since that time, Defendant has submitted three additional nonsensical filings. On November 4, 2014, Defendant filed a reply titled "Refused for Cause Without Dishonor." (Doc. 298.) In that motion Defendant "refuse[d] to consent to any concept, idea, or action that would construe, amend, or recharacterize movant's motion as an action under and pursuant to 28 U.S.C. [§] 2255" and accused the Government of intentional dishonesty and lack of candor. (Doc. 298 at 2, 5, 8.) He also mentioned for the first time an ineffective assistance claim based on his appointed counsel's failure to raise a defense based on the "territorial nature of this court." (Id. at 4.)

---

F. App'x 83 (11th Cir. 2010) (citations omitted). "Indeed, without inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge." Test, 420 U.S. at 30. Under no circumstances, however, would Defendant's challenge — that the Southern District of Georgia is limited to federal land and that federal grand jurors must reside on federal land to return a valid indictment — be meritorious, and thus the Court will not turn over to Defendant the grand jurors' personal contact information so that he may interview them, determine their "citizenship and residential qualifications," and "properly document a motion to dismiss the indictment on the grounds of improper venue." (Doc. 294 at 4, 18.) The Court therefore **DENIES** Defendant's requests to inspect pursuant to 28 U.S.C. § 1861(a), and for the reasons set forth more fully in this Order and United States v. Robertson, No. 2:13-CR-141-JAD-VCF, 2014 WL 4956208 (D. Nev. Oct. 2, 2014), the Court further **DENIES** Defendant's alternative and renewed motions to dismiss the indictment. (Docs. 294, 303.)

[2]     Castro v. United States, 540 U.S. 375, 377 (2003).

2

Ten days later, Defendant "conditionally accepted" this Court's "offer" to recharacterize his motion as one under § 2255 if and only if the Court provides "proof" that the United States District Court for the Southern District of Georgia is an Article III court, among thirteen other enumerated assertions. (Doc. 300 at 2.)

Lastly, on January 5, 2015, Defendant filed a "Renewed Motion to Dismiss, or in the Alternative, Motion to Show Cause for Lack of Reply, Response, or Order Granting the Motion of the Defendant." (Doc. 303.) He continues to argue that this Court is "devoid of Article III original venue and jurisdiction" and colorfully adds that the "government and the court have mutually participated in . . . actions[] [to] delay, obfuscate, and act in obstruction of justice." (Id. at 4, 7.) Apparently perturbed that the Court has not resolved his case at a speed to his liking, Defendant further directs the Court to take "mandatory judicial notice" of the canons of judicial conduct given its "capricious disregard" for his rights. (Id. at 1-4.)

Now, as before, the Court has carefully considered Defendant's original motion (Doc. 294), supplemental filings (Docs. 298, 300), and renewed motion (Doc. 303). It has construed each of his pro se filings liberally in the interests of justice. See United States v. Hung Thien Ly, 646 F.3d 1307, 1316 (11th Cir. 2011). For the reasons stated herein, however,

3

the Court **DENIES** Defendant Anthony Bruce Crago's motion to inspect the grand jury list or dismiss the indictment (Doc. 294) and his renewed motion to dismiss (Doc. 303).

## DISCUSSION

The Court notes at the outset that Defendant's allegations are remarkably similar, if not identical, to those in another case filed by a criminal defendant who relied on theories copied and pasted from the website of "Dr. Eduardo M. Rivera," a disbarred attorney who holds himself out as a Professor of Law and Government at the Ed Rivera Internet Law School. (See, e.g., Doc. 294-1 at 37, 40, 43, 46, 56, 58, 60 (noting, in letters to the Clerk of Court, Senior Deputy Clerk, Congressman Paul Brown, Congressman John Barrow, and Senator Saxby Chambliss, that Defendant has received an "opinion letter" from "constitutional scholar" Rivera about the "genesis and status of the U.S. District Court").) See United States v. Robertson, No. 2:13-CR-141-JAD-VCF, 2014 WL 4956208, at *4-5 (D. Nev. Oct. 2, 2014) (internal internet citations omitted). United States Magistrate Judge Ferenbach of the United States District Court for the District of Nevada recently outlined in thorough form Rivera's background, which reflects that Rivera has "made a career out of deceiving people:"

> Eduardo Rivera was admitted to practice law in 1972. In 2006, Rivera was disbarred for failing to comply with the law, advising his clients to violate the law, and acting with moral turpitude, dishonesty, and corruption when

4

practicing law. See <u>In the Matter of Eduardo Rivera</u>, Case No. 03-O-01778-RAP (Cal. Bar Ct. March 7, 2006).

In at least one instance, the advice that Rivera gave to his client resulted in the client's imprisonment. In <u>United States v. Simkanin</u>, 420 F.3d 397 (5th Cir. 2005), Rivera's client —defendant Richard Michael Simkanin — was indicted and convicted of tax fraud after Rivera advised Simkanin that Simkanin and his employees "had no legal duty to pay taxes." <u>Simkanin</u>, 420 F.3d 397, 403. Rivera's advice was wrong. As a result of following Rivera's advice, Simkanin was sentenced to eighty-four months (i.e., seven years) in prison. <u>Id.</u>

In another case, Rivera offered different clients the same advice. He told his clients that if they do not file tax returns, then they do not have to pay taxes. <u>United States v. Rivera</u>, No. CV 03-2520-GHK-(JWJX), 2003 WL 22429482, at *1 (C.D. Cal. 2003). This was a lie. Rivera then sold his clients "opinion letters" that cost between $100.00 and $2,000.00 and told them that his letter would protect them from criminal liability. <u>Id.</u> This was also a lie. In <u>United States v. Rivera</u>, the court reviewed Rivera's legal arguments and opinion letters and concluded that they are "frivolous" and caused substantial harm to Rivera's clients and the United States. <u>See id.</u> at *10.

Since being disbarred, Rivera appears to have been unable to find real work. He founded an internet school in his own name called the "Ed Rivera Internet Law School" and then appointed himself "Professor of Law and Government." However, there is no Ed Rivera Internet Law School. There are no online courses; there are no degree programs; there are no teachers or students.

The only things that exist are a series of websites where Rivera posts the same type of advice that put Simkanin in jail. For instance, Rivera promises his readers "[t]he Magic Bullet [that] makes the federal trial courts disappear as Article III judicial bodies." DR. EDUARDO M. RIVERA, ED RIVERA'S "BRIEF" ON ARTICLE III, http://www.1215.org/lawnotes/work-in-progress/article-iii-court-by-ed-rivera.html (last visited June 26, 2014).

<u>Robertson</u>, 2014 WL 4956208 at *4-5 (internal website citations omitted). Judge Ferenbach proceeded to dismantle each of Rivera's farfetched and misguided theories about the authority of the United States District Courts and "territorial law" — the

same theories presented by Defendant here. See *id.* at *5-8. There is no need to repeat Judge Ferenbach's analysis in this case.

This Court will, however, repeat Judge Ferenbach's warning: Defendant's continued reliance on Rivera's faulty — if not fraudulent — advice is an unwise, transparent strategy and may subject Defendant to substantial prejudice. Indeed, the Court will not tolerate in the future Defendant's abuse of an already overloaded court docket with meritless claims like those presented here. See *Cofield v. Alabama Pub. Serv. Comm'n*, 936 F.2d 512, 518 (11th Cir. 1991) (stating that Courts "may limit the filing of frivolous law suits on a case by case basis" and "take other, more creative, actions to discourage hyperactive litigators as long as some access to the courts is allowed"); *see also* *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988) (internal quotation marks omitted).

Beyond the reasons set forth more fully in *Robertson* with respect to the merits of Defendant's motions, the Court finds that it lacks subject matter jurisdiction to consider them. Federal prisoners generally may seek post-conviction relief in two forms[3]: (1) Section 2255 relief and (2) Section 2241 habeas

---

[3] Criminal defendants, of course, may also challenge their convictions and/or sentences by direct appeal. In this case, Defendant did not file a notice of appeal within the requisite fourteen-day period prescribed by Federal Rule of Appellate Procedure 4(b)(1)(A). The Court may extend the time to file a notice of appeal up to thirty days from the expiration of the initial fourteen-day window upon a finding of "excusable neglect or good cause." FED. R. APP. P. 4(b)(4). Given the proper circumstances, this Court

corpus relief. Medberry v. Crosby, 351 F.3d 1049, 1058 (11th Cir. 2003). Ordinarily, an action in which an individual seeks to collaterally attack his conviction should be filed under 28 U.S.C. § 2255 in the district of conviction. Moore v. Maldonado, 165 F. App'x 812, 813 (11th Cir. 2006); Sawyer v. Holder, 326 F.3d 1363, 1365 (11th Cir. 2003). In those instances where a § 2241 petition attacking custody resulting from a federally imposed sentence is filed, those § 2241 petitions may be entertained where the petitioner establishes that the remedy provided under 28 U.S.C. § 2255 "is inadequate or ineffective to test the legality of his detention." Wofford v. Scott, 177 F.3d 1236, 1238 (11th Cir. 1999); accord Ramiro v. Vasquez, 210 F. App'x 901, 904 (11th Cir. 2006). This provision, known as the "savings clause[,] applies only when: (1) the petitioner's claim is based on a retroactively applicable Supreme Court decision; (2) the holding of that decision established that the petitioner was convicted of a 'nonexistent offense'; and (3) 'circuit law squarely foreclosed such a claim at the time it otherwise should have been raised at the petitioner's trial, appeal, or first § 2255 motion.'" Moore, 165 F. App'x at 814 (citing Wofford, 177 F.3d at 1244).

---

would have been authorized to extend Defendant's deadline to appeal until February 2, 2014, but no further. Defendant filed his initial motion on October 25, 2014 and the corresponding "renewal" on January 5, 2015. His filings, therefore, are not properly before the Court as out-of-time appeals either.

As previously noted, the Court issued Defendant a <u>Castro</u> warning with respect to his initial motion, Document 294, on October 27, 2014. (Doc. 297.) Defendant did not consent to the Court's recharacterization of the motion as one arising under 28 U.S.C. § 2255 (Doc. 298) and the Court will not entertain his later-filed "conditional acceptance" motion (Doc. 300): either Defendant consents to recharacterization or he does not.[4] Accordingly, 28 U.S.C. § 2255 does not confer jurisdiction upon the Court to decide Defendant's motion to dismiss. Moreover, Defendant's initial filing and its claims clearly do not fit within the savings clause as interpreted in <u>Moore</u> and <u>Wofford</u>. Thus, 28 U.S.C. § 2241 likewise fails to confer jurisdiction upon the Court to hear Defendant's motion to dismiss.

For the foregoing reasons, the Court **DENIES** Defendant's motion to inspect the grand jury list or dismiss the indictment (Doc. 294) and his renewed motion to dismiss (Doc. 303).

**ORDER ENTERED** at Augusta, Georgia, this ___7th___ day of January, 2015.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[4]    To Defendant's requests for "proof" of various "facts" and conclusions from the Court, the Court emphasizes that it is not the Court's duty to refute or disprove *any* party's arguments, but only "to provide for the just determination of every criminal proceeding." <u>Robertson</u>, 2014 WL 4956208 at *5 (citing FED. R. CRIM. P. 2).